30 So.2d 758

## WASHINGTON v. INDEPENDENT ICE & COLD STORAGE CO. et al.

### No. 38296.

April 21, 1947.

Eugene J. Coen, of Shreveport, for plaintiff.

Jackson & Mayer, and Edw. S. Robertson, all of Shreveport, for defendants-appellees.

FOURNET, Justice.

John Henry Washington instituted this suit for compensation under the total permanent disability clause of Act No. 20 of 1914, as amended, subject to payments received for a period of 150 weeks, when he was informed by his employer's insurer, the Liberty Mutual Insurance Company of Boston, Mass., that he would receive no further compensation for the loss of his right hand, amputated during the course of his employment by the Independent Ice and Cold Storage Company as a helper on an ice delivery truck. The matter is now before us on a writ of certiorari granted

upon the plaintiff's application to review the judgment of the Court of Appeal for the Second Circuit (29 So.2d 796, 799) affirming the judgment of the district court dismissing his suit.

The Court of Appeal in its opinion stated there is very little dispute about the facts of the case or that the plaintiff actually lost his right hand above the wrist while in the course of his employment by the defendant ice company at a weekly wage of $10.50 and that the sole question for determination is whether or not the plaintiff's claim is compensable under the provisions of Section 8, subsection 1(b) of the act, Act No. 242 of 1928, p. 357, for total permanent disability to do work of any reasonable character, as contended by the plaintiff, or whether it is compensable under the provisions of subsection 1(d) 5 of Section 8 for the loss of a hand. The court concluded the preponderance of the evidence is against the contention of the plaintiff that he is unable to do any work of a reasonable character similar to the work he was doing when injured for the reason that " * * * it is not shown * * * the plaintiff suffers any pain on account of the loss of the hand and clearly he should be able to do a number of things classed as common labor. He might still perform the same kind of work he was doing at the time he was injured, though it would be more difficult for him."

It is the well-settled jurisprudence of this court that where an employee loses the use of a member of his body or where he loses the member itself by amputation and such loss produces incapacity to do work, such injury is controlled by paragraphs (a, b, or c) of subsection 1, Section 8 of the Workmen's Compensation Act and not by paragraph (d) of that section, which applies regardless of capacity to work and irrespective of the duration of the disability. Black v. Louisiana Central Lbr. Co., 161 La. 889, 109 So. 538; Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; McGruder v. Service Drayage Co., 183 La. 75, 162 So. 806; Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Ranatza v. Higgins Industries, Inc., 208 La. 198, 23 So.2d 45; Wilson v. Union Indemnity Co., La.App., 150 So. 309; Custer v. New Orleans Paper Box Factory, Inc., La.App., 170 So. 388; and Henry v. Higgins Industries, Inc., La.App., 24 So.2d 402.

While counsel for the defendants do not agree with the construction given these provisions of the act by the courts, they concede it is the jurisprudence of the state, contending that while there is justification for this interpretation in the cases involving a skilled employee who has suffered an injury that prevents him from performing skilled labor, "The principles of those cases are not * * * applicable * * * to the case at bar, as this claimant prior to and at the time of the accident, was only engaged in light manual labor that required

a minimum of effort and skill," and that "For the court to hold that the plaintiff in the instant case is entitled to receive more than is provided under the specific loss provision of the Compensation Act, it must entirely and completely disregard those provisions of the Act."

This court in the case of Barr v. Davis, supra, in construing Act No. 20 of 1914, as amended, made the unqualified statement that the legislature by its adoption of this act intended to provide that an employee should be paid compensation for an injury (whether temporary total, permanent total, or partial disability) suffered in the course of his employment *"during the period of disability,* under the provisions of paragraphs (a), (b), and (c), while under the provisions of paragraph (d) the *compensation shall be paid irrespective of the duration of the disability,"* [183 La. 1013, 165 So. 186], and concluded that "it was not the intention of the Legislature to have paragraph (d) supersede and take precedence over the disability sections, but rather to supplement them." In the course of the opinion the following observation was made: "The main object of the legislators in enacting the Employer's Liability Act was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. But while they had in mind as their main object the disability of the injured employee and the necessity

of funds to sustain himself *during such disability,* they also had another object in view, that there might arise specific injuries such as severance or amputation of members or disfigurement, etc., *without disability* and having by the statute deprived the employee of the right to recover in tort, the legislators deemed it just and wise that an employee should have the right to compensation in such cases; hence the provisions of the act under paragraph (d), where disability is not mentioned." (Italics ours.)

In other words, as was very succinctly stated by the Court of Appeal for the Parish of Orleans in the case of Wilson v. Union Indemnity Company, supra, where all of the former jurisprudence on this subject was very carefully analyzed and reviewed in a well-considered opinion [150 So. 312], "It has been held many times that subsections (a), (b), and (c) cover all cases of injuries affecting earnings, while subsection (d) has been applied regardless of earnings. * * * In short, subsection (d) is not strictly compensatory, but is in the nature of a tort remedy for a personal injury not affecting earning capacity or ability to work."

We adhere to this construction, not only because we think it is a reasonable one to be given to these provisions from the language used but also because it is clearly within the intendment thereof.

This leaves for our consideration the question of whether the plaintiff was in fact

totally permanently disabled to do work of any reasonable character.

The plaintiff who, at the time of his injury, was 18 years old was an untrained and unskilled negro with a very limited education, he having attended grade school only. His only employment, other than his prior employment when a mere boy to make deliveries on a bicycle, was as a helper or laborer assisting in the crushing and delivery of ice from an ice truck, which work he had been doing for two years when the accident occurred. The plaintiff testified that shortly after his injury was healed his former employer in an effort to fit him into some phase of its business had employed him in the cold storage department but that he was fired after his return to work following a short illness for the reason that the company could not find anything for which he was fitted; that in addition to making numerous efforts to secure employment himself in Shreveport, Louisiana, where he lived, he sought the assistance of the division of the Department of Public Welfare whose duties consist of handling and endeavoring to place handicapped persons, all to no avail. He also testified that during a stay in California, where he visited his sister for a year, he applied to several companies doing war construction work and that none of these companies would give him employment except the Consolidated Steel Company and that even this company, after trying him out for approximately two weeks on various assignments in an effort to find something he could do or that was suitable for him, released him. He stated all of the persons to whom he applied for employment merely looked at him and upon observing his condition said they could not use him or did not need him.

In this testimony he is corroborated by his mother and by the physician who amputated his hand at the time of the injury. The latter testified that if his appreciation of the requirements necessary for employment to crush and deliver ice were correct, the use of both hands was imperative and that the plaintiff was totally and permanently disabled to do that kind of work.

■ This testimony is uncontroverted. The only evidence offered by the defendants was that of a Mr. Fortson, an employee of the ice company where the plaintiff worked at the time of his injury, and from him counsel sought to elicit information that would tend to impeach the plaintiff by showing he was working for the ice company only two weeks instead of two years and to show that he was not fired after his return to work following his injury but that he left voluntarily. The evidence on this point sustains the conclusion of the Court of Appeal that the efforts of the defendant to impeach the plaintiff were without avail.

■ We think the evidence clearly shows the plaintiff is totally and permanently dis-

abled to do work as a common laborer of any reasonable character, within the meaning and contemplation of the Workmen's Compensation Act. As was very aptly pointed out in the case of Henry v. Higgins Industries, La.App., 24 So.2d 402, 404, "We think it very obvious that the plaintiff * * * a common laborer, could no longer compete with other able-bodied laborers in the securing of employment.

Consequently, the contention of the defendants that the plaintiff is not entitled to additional compensation because the trial judge and the Court of Appeal concluded he could engage in work of a reasonable character in line with his work as a delivery boy, although this was not the work in which he was engaged at the time of his injury, finds no justification in either fact or law for it was clearly shown the plaintiff had been engaged for a period of at least two years as a helper on an ice truck and, according to his testimony, he intended to make this his life work. Certainly his earning capacity at the time of his injury is not to be gauged by the type of employment undertaken by him as a boy. Besides, according to plaintiff's testimony he is not only unable to work as a delivery boy on account of the loss of his right hand, but he has been unable to get any one to even employ him in that capacity on trial.

█ Counsel for the defendants both orally and in brief have argued that should we reach the conclusion we have in this case, then that the case should be dismissed as having been filed prematurely because when the suit was filed on October 5, 1945, there was no compensation due him because he had been paid through October 11. On this point we conclude as did the Court of Appeal that this plea is without merit. The plaintiff, after having received compensation for 150 weeks, was entitled to have determined immediately upon being informed he was not entitled to receive any more compensation the extent of his disability and his right to further compensation.

█ For the reasons assigned, the judgments of the district court and of the Court of Appeal for the Second Circuit are annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of John Henry Washington and against the Independent Ice & Cold Storage Company and the Liberty Mutual Insurance Company of Boston, Mass., in solido, for compensation at the rate of $6.82 a week beginning November 26, 1942, during disability for a period not to exceed 400 weeks, less the 150 weeks during which he was paid with legal interest from the due date of each installment until paid. It is further ordered, adjudged, and decreed that the fee of Eugene J. Coen as attorney for the plaintiff is hereby fixed at the sum of 20% of the amount awarded the plaintiff under this judgment, not to exceed $1,000. All costs are to be borne by the defendants.

O'NIELL, C. J., is of the opinion that the plaintiff is entitled to compensation for only 150 weeks according to subsection 1(d) 5 of Section 8 ·of the statute, Act No. 242 of 1928, p. 357.