295 So.2d 909 (1974)
Kenneth JORDAN, Plaintiff-Appellant,
v.
FARM BUREAU INSURANCE COMPANY, Defendant-Appellee.
No. 12327.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1974.
Rehearing Denied July 1, 1974.
Sam Nelken, Natchitoches, for appellant.
Brittain & Williams, by Jack O. Brittain, Natchitoches, for appellee.
Before BOLIN, PRICE and HALL, JJ.
PRICE, Judge.
Kenneth Jordan seeks benefits under the workmen's compensation statute for an alleged total and permanent disability resulting from an injury received on October 26, 1970, while operating a farm tractor for his employer in Red River Parish. Defendant herein is the workmen's compensation insurer, Farm Bureau Insurance Company.
On the date of the accident plaintiff attempted to step off the tractor while the power take-off mechanism was in operation and in so doing caught his trouser leg *910 in this machinery, resulting in an evulsion of the skin from his genital organs. After treatment by skin grafting he was released by the urologist to work on January 5, 1971, and immediately began working at a service station. Plaintiff contends he is unable to return to employment involving the operation of farm machinery as he had developed a phobia or fear of being around this type equipment because of the injury he received on the tractor. On the theory he was performing work of a skilled nature at the time of the injury and can no longer follow this type trade or employment, plaintiff demands benefits for a total and permanent disability.
Defendant admits the injury and shows payment of compensation benefits were made to plaintiff for 100 weeks at $49 per week plus all medical expenses, and denies plaintiff is entitled to any further benefits under the statute. It is defendant's position plaintiff was not a skilled laborer and as he is well able to and did procure employment of equivalent wages in the common labor market shortly after recovery from the injury, he is not permanently disabled to do work of a reasonably similar nature to that being performed at the time of his accidental injury.
The trial judge found on the basis of the evidence presented plaintiff was not a skilled laborer and that although he agreed plaintiff could not operate farm machinery because of his phobia, this condition does not preclude him from competing on the common labor market. From the formal judgment rejecting his demands plaintiff has filed this appeal.
Plaintiff's argument in brief to this court is twofoldprimarily he contends the evidence in the record of this case shows he was a skilled operator of farm machinery, thus it was error to conclude plaintiff was merely a common laborer; secondly, even should plaintiff be accorded the status of a common laborer, his ability to obtain similar employment, that is farm labor, is impaired as the evidence shows farm employers would not hire him from the common labor pool because of his inability to work with farm machinery.
The compensation statute provides a claimant's disability be total and permanent if his injury and resulting disability renders him unable to perform "work of any reasonable character." In defining what "work of any reasonable character" is intended to mean as used in the statute, the majority opinion in the case of Anderson v. Rowan Drilling Company, 150 So.2d 828 (La.App. 3rd Cir. 1963) writ denied; 244 La. 222, 151 So.2d 693 (1963), ably discussed the principles and guidelines usually followed by the jurisprudence in resolving this question as follows:
"The jurisprudence is settled to the effect that when an employee is trained, experienced and skilled in a special trade or work, and then as the result of a work-connected injury he becomes disabled from performing the only type of work to which he is suited by training and experience, or work of a similar character, the disability must be construed as total disability to do `work of any reasonable character,' within the meaning of the Workmen's Compensation Act. LSA-R.S. 23:1221; Ranatza v. Higgins Industries, 208 La. 198, 23 So.2d 45; Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50. If the injured or disabled employee, however, is an unskilled laborer, that is, one who is not specially equipped by training, experience and skill in a particular trade or type of work, he participates in a broader and more varied field of labor, and he is not considered as being disabled from doing `work of any reasonable character' unless his disability is of such a nature that it substantially handicaps him in competing with ablebodied men in the common labor market. Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Olivier v. Liberty Mutual Insurance Company, supra; Comoletti v. Ideal Cement Company, La.App. 1 Cir., 147 *911 So.2d 711; Malone, Louisiana Workmen's Compensation, Sec. 275.
"In many cases it is difficult and unrealistic to classify a worker as a skilled, semi-skilled or common laborer in order that the rules hereinabove stated may be applied. For that reason, we think there must be some flexibility in making that determination, and that each case must stand on its own peculiar facts.
"In that connection we quote with approval the following observation by Professor Wex S. Malone in his treatise entitled Louisiana Workmen's Compensation Law and Practice, Chapter 13, Section 275 (1962 Pocket Part, page 118):
"`This flexibility is afforded by the broad phrase, "work of any reasonable character'" as set forth in the compensation statute. As the extent of skill required in the work performed prior to accident increases, there should be a correspondingly increased insistence that the new work closely resemble the old. Nothing more definite than this is possible or practical.'"
"In Brannon v. Zurich General Accident & Liability Ins. Co., 244 La. 161, 69 So.2d 1, our Supreme Court said:
"`There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As was pointed out in the Wright case [Wright v. National Surety Corp., 221 La. 486, 59 So.2d (695) 697], "`The question here, as in all these cases, is whether plaintiff is "disabled to do work of any reasonable character" within the intendment of the compensation statute'."
Applying the foregoing principles, which we think are a correct statement of the law to the instant case, we conclude the decision of the trial judge is correct.
Plaintiff is a young man who was raised in Missouri. He quit high school and entered the army at age 17. He served in the infantry for approximately four years and was released in 1965. The extent of his work experience involving farm machinery, including tractors and combines, is best described in his own testimony as follows:
"Q. How old were you when you first started working for Mr. Young?
"A. The first time? Twenty-five or twenty-six.
"Q. Isn't it a fact that when Mr. Young had you spray the milo tract that you skipped so many places they had to go back over it and spray it again?
"A. He said they did, yes, sir.
"Q. Where had you driven a tractor before?
"A. In Missouri.
"Q. For whom?
"A. I had some relatives that had tractors.
"Q. How long had you driven a tractor before you came down here to work for Mr. Young?
"A. I just drove off and on sometimes, I worked for the school that had a farm, and then I had some friends that had a tractor. I drove for them.
"Q. How long did you work for this man that you named a while ago driving a tractor?
"A. A couple of weeks during the summer while I was out of school.
"Q. And that is the only real work that you had driving a tractor, is that right?
"A. Yes, sir.

*912 "Q. So really, you didn't know much about tractor driving until you got down to Mr. Young's place, did you?
"A. I didn't know everything about it, no, sir.
"Q. Isn't it true that they had to teach you what little teaching it took to learn how to drive that tractor?
"A. Repeat that question, please?
"Q. Isn't it a fact that they had to teach you, when you got to Mr. Young's, what little bit you have to know to drive a tractor?
"A. That particular tractor, I never drove one like that.
"Q. They had to teach you when you got there?
"A. Yes, sir.
"Q. It didn't take but a couple of hours to learn how to drive it, though, did it?
"A. It might not have taken that long.
"Q. Mostly the kind of work that you had done when you had worked on a farm in Missouri was to pick cotton and chop cotton and things like that, isn't it?
"A. Yes, sir."
Plaintiff first worked for defendant's assured for a two month period in 1969 just after moving from Missouri to Red River Parish, Louisiana. He then worked at a service station from September, 1969, until sometime in March, 1971, when he was again hired to work on a larger farm operated by the assured. On this occasion he and his wife moved into a tenant house and were allowed to live there rent free to have someone living near the place where the farm equipment was stored at night. His principal work was driving a tractor on pasture land pulling a disc or a sprayer. Plaintiff worked from March until his accident in October and was paid wages averaging between $260 and $325 per month. After recovering from his injury in January, 1971, plaintiff began working at the service station where he had previously been employed at a weekly wage of $90 per week. At the time of trial he had begun working at a body shop for this same wage, doing unskilled labor.
The record contains testimony from a number of large farm owners in the Red River, Natchitoches Parish area who testified on the issue of whether tractor driving is a skilled occupation. The sum and total of their testimony, as we can best interpret it, is to the effect a person with no particular skill or mechanical knowledge can be taught in a few minutes to operate a tractor in a basic manner. His expertise and versatility in the operation of various appliances to the tractor and in the operation of other more complex farm machinery, such as combines, increases only with work experience and training.
We conclude, as did the trial judge, plaintiff had not had sufficient work experience with farm machinery, nor had he followed this avocation a sufficient length of time, to be considered a person possessing any special skill in this area of work.
Although we find the evidence sufficient to establish plaintiff is definitely disabled from operating farm machinery because of his phobia, we do not find this disability has the effect of rendering plaintiff unable to compete in the common labor market. It will, of course, have the probable effect of handicapping him from obtaining employment in agriculture. However, he had previous to his injury done service station work and has had constant employment in this type work since recovery from his injury making an equivalent wage. There are any number of other jobs available for common labor which do not entail the use of tractors or related equipment.
The trial court, after hearing the evidence regarding plaintiff's financial affairs, *913 sustained the defendant's motion to traverse the order initially signed allowing plaintiff to proceed in forma pauperis. The court was of the opinion plaintiff's earnings were such he should not be allowed the privilege of litigating without payment of court costs. A wide discretion is accorded the trial judge in determining the right of a plaintiff to litigate under the pauper statute. We find no abuse of his discretion in this instance.
For the foregoing reasons the judgment appealed from is affirmed at appellant's costs.
BOLIN, J., dissents, with written reasons.
BOLIN, Judge (dissenting).
The majority found:
"Although we find the evidence sufficient to establish plaintiff is definitely disabled from operating farm machinery because of his phobia, we do not find this disability has the effect of rendering plaintiff unable to compete in the common labor market. It will, of course, have the probable effect of handicapping him from obtaining employment in agriculture. However, he had previous to his injury done service station work and has had constant employment in this type work since recovery from his injury making an equivalent wage. There are any number of other jobs available for common labor which do not entail the use of tractors or related equipment."
Considering the foregoing quoted portion of the opinion, together with the other statements therein, I think the holding of the majority is contrary to the modern jurisprudence, particularly a recent case decided by this court. Carlisle v. Great American Insurance Company et al, La. App., 291 So.2d 449 (writs refused La.App., 292 So.2d 244, Dixon, J., dissenting from refusal to grant plaintiff's request for penalties and attorneys fees; defendant's application for writs refused La.App., 292 So.2d 247).
In Carlisle, as in this case, plaintiff was injured while performing common labor. We found he could perform the same type of work he was doing at the time of the accident and perform all the duties in connection therewith. Despite this, we concluded his accident had substantially handicapped him in competing in the flexible common labor market, basing the decision on the following statement of law:
"The jurisprudence has established the rule that a common laborer will be considered as being totally disabled from doing work of any reasonable character within the meaning of the Louisiana Workmen's Compensation Act if his injuries disabled him from performing work of a kind similar to that which he was accustomed to performing, or if his injury is of such a character that it appears he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Stephney v. Robertson (La. App. 4th Cir. 1969) 219 So.2d 9, and numerous cases cited."
In the instant case plaintiff was unable to operate farm machinery because of a job-related accident. Inability to operate farm machinery removes him from the farm labor market, which I think substantially handicapped him in "competing with other able-bodied workers in the common labor market."
I respectfully dissent from the majority's finding that plaintiff was not totally and permanently disabled within the meaning of the Louisiana Workmen's Compensation Act.